**NOT FOR PUBLICATION** (Doc. No. 7)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| JENNIFER TRONCONE, | : | |
| Plaintiff, | : | Civil No. 10-2961 (RBK/AMD) |
| v. | : | **OPINION** |
| EFTHEMIOS VELAHOS, NANCY VELAHOS, THE VELAHOS LAW FIRM and the NATIONAL FORECLOSURE CONSULTANT GROUP, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter arises out of allegedly unlawful employment compensation practices by a company that provides foreclosure prevention services. Presently before the Court is the motion by Plaintiff Jennifer Troncone to: (1) certify a proposed collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and (2) certify a proposed class action pursuant to Federal Rule of Civil Procedure 23; and (3) for default judgment pursuant to Federal Rule of Civil Procedure 55. The Complaint alleges that Defendants Efthemios Velahos, Nancy Velahos, the Velahos Law Firm, and the National Foreclosure Consulting Group ("NFC") failed to pay Plaintiff and others similarly situated minimum wage and overtime pursuant to the FLSA and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a et seq., and that Defendants failed to pay Plaintiff earned salary and commissions under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat.

1

Ann. § 34:11-4.1 et seq. The Complaint also alleges unjust enrichment under New Jersey law. For the reasons expressed below, Plaintiff's motions are **DENIED**.

## I.   BACKGROUND

### A. Factual Background

Defendant Efthemios Velahos is an attorney licensed to practice law in the State of New Jersey, and operates the Velahos Law Firm ("the Firm") with his wife Nancy Velahos. NFC is an organization that provides "mortgage modification and foreclosure prevention services." (Compl. ¶ 6). NFC advertises to the public that "for a fixed fee of several thousand dollars," it can delay or prevent mortgage foreclosures. (Id. ¶¶ 10, 11). NFC employs sales representatives who market its services to the general public and initiate the mortgage modification process with each of their clients. After NFC's sales representatives obtain the mortgage and foreclosure documents from their clients, they transfer the documents to the Firm. The Complaint alleges that NFC's sales representatives were promised a commission of twenty-five percent of the fees they brought in to the company.

NFC employed Plaintiff as a sales representative between July 2009 and February 2010. Plaintiff alleges that Defendants failed to pay her and other similarly situated employees (1) minimum wage; (2) overtime; and (3) "the full salary or commissions that they were promised." (Id. ¶ 18). In addition, Plaintiff alleges that "[i]n or around October or November of 2009, the Defendants wrongfully designated Plaintiff and other employees as independent contractors and stopped withholding taxes and stopped paying [Defendants'] share of wage withholdings such as social security and medicare." (Id. ¶ 22).

### B. Procedural Background

On June 10, 2010, Plaintiff filed the Complaint. Count One of the Complaint alleges

that:

>Defendants violated the [FLSA] by failing to pay Plaintiff and similarly situated employees a minimum wage for all hours worked.
>
>Defendants violated the FLSA by failing to pay employees overtime pay at one and one-half times their regular rate of pay for all hours worked over forty in a week.

(Compl. ¶¶ 38, 39). Count Two alleges:

>Defendants violated [the NJWHL] and Regulations by failing to pay Plaintiff and similarly situated employees a minimum wage for all hours worked.
>
>Defendants violated [the NJWHL] and Regulations by failing to pay employees overtime pay at one and one-half times their regular rate of pay for all hours worked over forty in a week.

(Id. ¶¶ 42, 43). Count Two also alleges that Defendants violated "[the NJWHL] and Regulations" by failing to pay Plaintiffs their promised salaries and commissions.[1] Count Three, Plaintiff's unjust enrichment claim, alleges that Defendants "improperly classified Plaintiff and similarly situated employees as independent contractors, thereby shifting costs for the employers' share of wage withholding taxes such as social security and medicare from themselves to Plaintiff . . . ." (Id. ¶ 45).

On June 17, 2010, Plaintiff served the Summons and Complaint upon all Defendants.[2] Defendants failed to answer or otherwise enter a responsive pleading within twenty-one days as

---

[1] In the moving brief, Plaintiff argues that the Court should exercise supplemental jurisdiction over Plaintiff's NJWPL claim. However, the Complaint does not allege an NJWPL claim. Count Two of the Complaint alleges "New Jersey Wage and Hour Law and Regulations." (Compl. at 7). However, because Defendants do not object to Plaintiff's failure to allege an NJWPL claim, and the Court may reasonably construe Plaintiff's "New Jersey Wage and Hour Law and Regulations," claim as a claim for relief under the NJWHL and the NJWPL, the Court will entertain Plaintiff's NJWPL claim.

[2] The Court notes that the Affidavit of Service confirming service of process upon Nancy Velahos states that Plaintiff delivered the Summons and Complaint to Mrs. Velahos on June 17, 2005. (See Doc. No. 3 at 2). However, the Court assumes that this is a typographical error because the Court issued the Summons on June 10, 2010. (See Doc. No. 2). Therefore, the Court presumes that the Affidavit of Service should state June 17, 2010; not June 17, 2005.

3

required by Federal Rule of Civil Procedure 12(a).  As a result, the Clerk made an entry of default on August 18, 2010.  On February 22, 2011, Plaintiff moved (1) to certify an FLSA "opt-in" collective action and a Rule 23 "opt-out" class action, and (2) for entry of default judgment as to all claims against Defendants.  Plaintiff's proposed "opt-in" class consists of "all sales representatives that worked for Defendants' mortgage modification business."  (Pl.'s Br. at 9). Defendants opposed Plaintiff's motion.  The parties submitted their respective briefs and the motion is ripe for review.

### III.  DISCUSSION

#### A. Final Certification of Plaintiff's Opt-In Class

Plaintiff seeks final certification of this matter as a "collective action" under the FLSA.[3] "For an action to proceed as a collective action under § 216(b), (1) class members must be 'similarly situated' and (2) members must affirmatively consent to join the action."  Herring v. Hewitt Assocs., Inc., No. 06-267, 2007 WL 2121693, at *2 (D.N.J. July 24, 2007); see Morisky v. Pub. Serv. Elec. and Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000) ("The primary issue to be decided [in a motion to certify a collective action] is whether the named plaintiffs are sufficiently 'similarly situated' to the opt-in plaintiffs such that this case may proceed as a collective action.") (quoting 29 U.S.C. § 216(b)).  The plaintiffs in a proposed collective action bear the burden of showing that they are similarly situated to the remainder of the proposed

---

[3] The FLSA creates certain wage and hour requirements for employers.  Under the FLSA a plaintiff may bring a collective action on behalf of himself and a group of "similarly situated" individuals for an employer's denial of minimum wage and overtime payments.  Section 216(b) of the FLSA provides:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

class. <u>Morisky</u>, 111 F. Supp. at 496.

Certification of a collective action occurs in two stages: (1) conditional certification and notice, and (2) final certification. <u>Ritzer v. UBS Fin. Servs., Inc.</u>, No. 08-1235, 2008 WL 4372784, *2 (D.N.J. Sept. 22, 2008) (citing <u>Morisky</u>, 111 F. Supp. 2d at 496). During the first stage, and "with minimal evidence," the court must determine "whether notice of the action should be given to potential class members." <u>Morisky</u>, 111 F. Supp. 2d at 497. "[T]his determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." <u>Id.</u> (internal citation omitted). In some cases, courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." <u>Id.</u> (citing <u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 407 (D.N.J. 1988)).

The second stage occurs "after discovery is largely complete and the case is ready for trial." <u>Id.</u> During this phase, the court conducts a "specific <u>factual analysis of each employee's claim</u> to ensure that each proposed plaintiff is an appropriate member of the collective action." <u>Lugo v. Farmer's Pride Inc.</u>, 737 F. Supp. 2d 291, 299 (E.D. Pa. 2010) (emphasis added). Similar to the first stage, the court makes a "certification decision based on the 'similarly situated' standard, but . . . require[s] a higher level of proof than [is] necessary at the first stage for conditional certification." <u>Id.</u> The court considers a variety of factors to determine whether the opt-in plaintiffs are similarly situated, including: (1) the "disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1103 (10th Cir. 2001); <u>see</u> <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375, 388 n.17 (3d Cir. 2007) ("A representative (but not exhaustive or

5

mandatory) list of relevant factors includes whether the plaintiffs are employed in the same corporate department, division and location; advanced similar claims . . . ; sought substantially the same form of relief; and had similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar on the basis of case management issues, including individualized defenses.") (citations omitted); Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987) (noting that court may consider "disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendants, and fairness and procedural considerations" at second stage of certification). "If the conditional group of plaintiffs does not meet [the applicable] standard at the second stage, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice and any remaining plaintiffs are permitted to move onto the trial stage of the litigation." Lugo, 737 F. Supp. 2d at 299.

Plaintiff seeks to "skip the conditional certification stage and move to full certification of the opt-in FLSA collective action." (Pl.'s Br. at 5). Plaintiff proposes a class consisting of all "sales representatives that worked for defendants' mortgage modification business." (Pl.'s Br. at 5). Mr. Velahos argues that Plaintiff is not similarly situated to all members of the proposed collective action because in November 2009, "there were 9 persons in [Plaintiff's] office, two of which were 'managers' and one of which was a per hour wage employee, leaving six that were possibly similarly situated to [Plaintiff] . . . ." (Def.'s Br. ¶ 11).

Based upon the current record, the Court finds that final certification is not appropriate. As a threshold matter, Plaintiff cannot "skip the conditional certification stage and move to full certification." (Pl.'s Br. at 5). The FLSA provides that "[n]o employee shall be a party plaintiff to any [FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Pursuant to § 216, the Third Circuit has adopted a two-step certification procedure whereby plaintiffs must obtain conditional certification of a proposed class, send notification to all prospective class members, and petition the court for final certification of the proposed class. Ritzer, 2008 WL 4372784, at *2. Thereafter, the court must determine whether each "opt-in" plaintiff is an appropriate member of the proposed class. At the current stage of this litigation, the Court cannot certify Plaintiff's proposed collective action because none of the members of the proposed class have joined the lawsuit by consenting in writing.[4] Because there is no evidence that any past or present employee of NFC filed a written consent to join Plaintiff's proposed collective action, the Court cannot conduct a "specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." Lugo, 737 F. Supp. at 299.

Moreover, because the Court does not have a complete list of opt-in class members, the Court cannot determine whether the class includes any parties that are exempt from the FLSA. Pursuant to 29 U.S.C. § 213(a), individuals who work in an "executive, administrative, or professional capacity" for a covered employer are exempt from the protections of the FLSA. Thus, to the extent that Plaintiff's proposed class consists of any individuals who performed executive, administrative, or professional functions during their employment with NFC, those individuals cannot proceed to trial as a part of Plaintiff's FLSA collective action. See Morisky, 111 F. Supp. 2d at 498-99 (declining to certify collective action because plaintiff failed to satisfy

---

[4] The Court notes that Jerry Lanz (Doc. No. 7 Lanz Certif.) and Gail Cawley (Doc. No. 7 Cawley Certif.), former sales representatives at NFC, submitted certifications in support of Plaintiff's motion for certification and default judgment. However, those certifications do not meet § 216(b)'s "opt-in" requirement. The certifications provided by Lanz and Cawley describe NFC's employment practices between 2009 and 2010, and support Plaintiff's argument that sales representatives at NFC did not receive appropriate compensation. However, nowhere in those certifications do either Lanz or Cawley expressly consent to join this lawsuit as members of Plaintiff's proposed collective action. Although the Court may consider those certifications as evidence of Defendants' allegedly unlawful compensation practices, the Court does not construe those certifications as written consent to join this lawsuit.

burden of demonstrating that all members of the proposed class were not exempt from the FLSA's wage and hour protections).

Therefore, because the Court lacks a complete record of all of the employees who consented to join Plaintiff's proposed collective action, the Court denies Plaintiff's motion for final certification of the proposed FLSA class.

### B. Conditional Certification of Plaintiff's Proposed Class

Although final certification of the proposed class is inappropriate at this juncture, the Court finds that Plaintiff is entitled to conditional certification. As previously mentioned, the first stage of the collective action certification process consists of conditional certification and notice. During this stage, the court determines whether the "[p]laintiff's proposed class is constituted of similarly situated employees." Bosley v. Chubb Corp., No. 04-4598, 2005 WL 1334565, at *2 (E.D. Pa. June 3, 2005). At this stage, the court uses a "fairly lenient standard," often requiring "nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan infected by discrimination." Morisky, 111 F. Supp. 2d at 497 (quoting Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998)).

The plaintiff bears the burden of demonstrating that he is similarly situated to the proposed class. Hewitt, 2007 WL 2121693, at *5. In order to meet that burden the plaintiff must show at least "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are similarly situated." Id. (internal citations omitted). Generally, courts "examine the pleadings and affidavits in support of or in opposition to the proposed collective action to make this determination." Id. The court need not evaluate the merits of the plaintiff's claims, or complete discovery in order to grant conditional

certification and facilitate notice. Id.

The Court finds that conditional certification of Plaintiff's proposed collective action is appropriate. The Complaint alleges that (1) Plaintiff was a "commissioned salesperson" for NFC Group between July 2009 and February 2010, (Compl. ¶ 9); and that (2) NFC Group "failed to pay [her] . . . the full salary or commissions [she was] promised," (id. ¶ 18). The Complaint also alleges that Defendants failed to pay Plaintiff minimum wage and "wrongfully designated [her] . . . as [an] independent contractor[] . . . ." (Id. ¶ 22). Plaintiff proposes a class consisting of all "sales representatives that worked for defendants' mortgage modification business." (Pl.'s Br. at 5). In addition, Plaintiff offers the certifications of two commissioned sales representatives at NFC who claim that they did not receive appropriate compensation under the FLSA. (See Cawley Certif.; Lanz Certif.). Based upon the allegations in the Complaint, and the documentation in the record, the Court is convinced that Plaintiff has satisfied her "lenient" burden of demonstrating that the proposed class is similarly situated. Therefore, although the Court cannot grant final approval of the proposed class, the Court is satisfied that a "factual nexus" exists between Plaintiff and the other NFC employees such that conditional certification of the proposed FLSA collective action is appropriate. See Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 918 n.4 (5th Cir. 2008) (noting that "district court could have sua sponte conditionally certified [a] collective action . . . ."); James v. Claiborne, No. 07-1570, 2009 WL 994951, at *4 (W.D. La. Apr. 13, 2009) (granting conditional certification of a proposed FLSA collective action sua sponte); Neagley v. Atascosa Cnty. EMS, No. 04-0893, 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005) (granting conditional certification sua sponte).

### C. Whether the Court May Exercise Supplemental Jurisdiction Over Plaintiff's NJWHL Claim

Plaintiff petitions the Court to exercise supplemental jurisdiction over her NJWHL and

NJWPL claims pursuant to the Court's discretionary authority under 28 U.S.C. § 1367(c).[5] Specifically, Plaintiff argues that the Court should exercise supplemental jurisdiction over her state class action claims for minimum wage and overtime because they are "essentially identical" to her FLSA collective action.  (Pl.'s Br. at 7).  Moreover, Plaintiff argues that the Court should exercise supplemental jurisdiction over her state law claim for unpaid commissions because it is "sufficiently intermixed" with her minimum wage and overtime claims.  (Id.).  The Court disagrees.

In light of the Third Circuit's decision in De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003), a district court must analyze whether a plaintiff may bring an FLSA collective action and a state law class action for the same conduct in federal court "through the lens of supplemental jurisdiction."  Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 182 (W.D. Pa. 2008).  Pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, when a federal court has jurisdiction over a plaintiff's federal claims, the court may also exercise supplemental jurisdiction over the plaintiff's state law claims "that are so related to [the plaintiff's federal] claims . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  As the Third Circuit stated in De Asencio, "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact[s]' with the claims that supported the district court's original jurisdiction."  342 F.3d at 308 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).  Importantly, "[w]here 'the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious.'"  Id. (quoting Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995)).

In this case, the Court may exercise jurisdiction over both Plaintiff's FLSA and NJWHL

---

[5] The Court notes that the Complaint does not allege diversity of citizenship as a basis for subject-matter jurisdiction, and there is no evidence that the parties in this matter are diverse.

10

claims. Both Plaintiff's FLSA and NJWHL claims allege that Defendant failed to pay her and other similarly situated employees minimum wage and overtime. Thus, Plaintiff's claims under the FLSA and the NJWHL are connected by a common nucleus of operative facts. Because those facts give rise to claims under both the FLSA and the NJWHL, the Court may exercise supplemental jurisdiction over Plaintiff's NJWHL claim under § 1367(a). See De Asencio, 342 F.3d at 308 ("Where the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious.") (internal quotation omitted); Woodard, 250 F.R.D. at 183 (finding that district court could exercise supplemental jurisdiction over plaintiff's claims under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law when defendant's conduct also violated FLSA because claims arose from "common nucleus of operative facts") (citing Lyon, 45 F.3d at 761).

However, even though 28 U.S.C. § 1367(a) grants the court authority to exercise supplemental jurisdiction over Plaintiff's NJWHL claim, a court "may decline to exercise supplemental jurisdiction over a [state law] claim . . . if – in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (emphasis added). In Joseph v. Caesar's Entm't Corp. et al., No. 10-6293 (D.N.J. July 21, 2011), this Court declined to exercise jurisdiction over the plaintiff's FLSA collective action and NJWHL class action because it determined that a conflict existed between the "opt-in" mechanism created by the FLSA and the "opt-out" mechanism created by Rule 23.[6] Specifically, the Court found that allowing a party to bring a Rule 23 class action for relief based upon the same conduct that gave rise to an FLSA collective action would undermine the Congressional policy of limiting FLSA

---

[6] A plaintiff who seeks to join an FLSA collective action must file a consent in writing with the presiding court. See 29 U.S.C. § 216(b). By contrast, "a putative class member of a Rule 23(b)(3) class action is assumed part of the class unless he requests exclusion from, or affirmatively opts out of, the class." See Woodard, 250 F.R.D. at 185 (citing Fed. R. Civ. P. 23(c)(2)(B)(v)).

11

collective actions to plaintiffs who expressly "opt-in" to the lawsuit.  Joseph, No. 10-6293, at 9.  The Court found that the conflict between the "opt-in" and "opt-out" regimes constituted a "compelling reason" for declining to exercise supplemental jurisdiction under § 1367(c)(4).  This lawsuit presents the same conflict.

Plaintiff's FLSA claim alleges that Defendants failed to pay her and other similarly situated employees minimum wage and overtime.  Plaintiff's NJWHL claim contains identical allegations.  Therefore, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state class action under the NJWHL.  Accordingly, Plaintiff's NJWHL class action is dismissed.

### D. Whether the Court May Exercise Supplemental Jurisdiction Over Plaintiff's NJWPL and Unjust Enrichment Claims?

Having determined that it cannot exercise supplemental jurisdiction over Plaintiff's NJWHL claim, the Court must also determine whether it may exercise supplemental jurisdiction over Plaintiff's NJWPL and unjust enrichment claims.  For the following reasons, the Court finds that § 1367 does not provide a basis for the Court to exercise supplemental jurisdiction over Plaintiff's NJWPL and unjust enrichment claims.

Pursuant to 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over all other claims "that are so related to claims in the action [over which the court has jurisdiction based on a federal statute] . . . that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, "three requirements must be satisfied before a federal court may exercise supplemental jurisdiction" over a plaintiff's state law claims.  MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995).  First, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court."  Gibbs, 383 U.S. at 725.  Second, "[t]he state and federal claims

must derive from a common nucleus of operative facts." MCI Telecomms., 71 F.3d at 1102 (citing Gibbs, 383 U.S. at 725). Third, "[t]he claims must be such that they would ordinarily be expected to be tried in one judicial proceeding." Id.

With respect to Plaintiff's NJWPL claim, the second element is not satisfied. First, the relief Plaintiff seeks under the FLSA and the NJWPL require distinctly different factual inquiries. Plaintiff's NJWPL claim seeks salary and commissions pursuant to an oral or written agreement. As Plaintiff correctly notes in her brief, the Complaint alleges that "Defendants promised sales representatives a commission of twenty-five percent (25%) of the fees that they brought in and that Defendants failed to pay the full commissions promised." (Pl.'s Br. at 20) (citing Compl. ¶¶ 13, 18). Thus, in order to determine whether Plaintiff is entitled to commissions, the Court must determine whether an alleged agreement for commissions-based compensation existed between the parties, and whether Plaintiff earned the promised commission by generating sufficient revenue. On the other hand, Plaintiff's FLSA claim seeks minimum wage and overtime pursuant to a federal statute. In order to determine whether Plaintiff is entitled to relief under the FLSA for minimum wage and overtime, the Court's factual inquiry is limited to whether Plaintiff performed her duties and whether Defendants paid her the compensation required by the FLSA. In other words, the Court can determine whether Defendants paid Plaintiff a salary of $7.25 per hour[7] and overtime, without examining whether Plaintiff received a twenty-five percent commission for the fees she generated between July 2009 and February 2010.

In sum, because Plaintiff's FLSA and NJWPL claims do not arise from the same nucleus of operative facts, the Court may not exercise supplemental jurisdiction over Plaintiff's NJWPL claim under 28 U.S.C. § 1367(a). See Hyman v. WM Fin. Servs., Inc., No. 06-4038, 2007 WL

---

[7] 29 U.S.C. § 206(a)(1)(C).

1657392, at *3-4 (D.N.J. June 07, 2007) (declining to exercise supplemental jurisdiction over plaintiff's NJWHL claim in FLSA action because exercising supplemental jurisdiction would require the Court to determine "whether [defendant] underpaid Plaintiffs by holding back commissions to pay other[]" employees); cf. Lyon, 45 F.3d at 763 (finding that district court abused its discretion by exercising supplemental jurisdiction over plaintiff's breach of contract and tort claims based on defendant's alleged underpayment of employment bonus in FLSA action). Accordingly, Plaintiff's NJWPL claim is dismissed.

Moreover, the second factor is not satisfied with respect to Plaintiff's unjust enrichment claim. Plaintiff's unjust enrichment claim alleges: "Defendants improperly classified Plaintiff and similarly situated employees as independent contractors, thereby shifting costs for the employers' share of wage withholding taxes such as social security and medicare from themselves to Plaintiff and similarly situated employees." (Compl. ¶ 45). In other words, Plaintiff's unjust enrichment claim concerns Defendants' alleged scheme to avoid paying required contributions to Social Security and Medicare by classifying Plaintiff as an independent contractor. By contrast, Plaintiff's FLSA claim concerns Defendants' alleged refusal to pay Plaintiff and others similarly situated minimum wage and overtime. Thus, the factual allegations that form the basis of Plaintiff's FLSA claim are separate and distinct from the facts that give rise to Plaintiff's unjust enrichment claim. Because Plaintiff's FLSA claim and Plaintiff's unjust enrichment claim do not arise from a common nucleus of operative facts, the Court cannot exercise jurisdiction over Plaintiff's unjust enrichment claim.

### E. Plaintiff's Motion for Default Judgment

Plaintiff also moves for default judgment. Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to

plead or otherwise defend an action.  See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  Although the entry of a default judgment is largely a matter of judicial discretion, the Third Circuit Court of Appeals has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable."  Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984) (citations omitted).

Before granting default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action."  Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., No. 05-4353, 2006 WL 2224416, at *2 (D.N.J. Aug. 1, 2006) (citing DirecTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. 1998).  The Court should accept all well-pleaded factual allegations in the complaint by virtue of the defendant's default, except for allegations relating to amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  However, the Court need not accept a plaintiff's legal conclusions.  Cotapaxi Custom Design & Mfg., LLC v. Pac. Design, No. 07-4378, 2010 WL 2330086, at *3 (D.N.J. June 8, 2010) (citing Signs by Tomorrow-USA, Inc., 2006 WL 2224416, at *2).

In addition, the Court must consider the following three factors when exercising its discretion to grant default judgment:  "(1) whether the party subject to default judgment has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 WL 3271726, at *3 (D.N.J. Aug. 17, 2010) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d

15

71, 74 (3d Cir. 1987)). "In weighing [those] factors, [the] district court[] must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." Dough Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984)).

Here, the Court cannot grant Plaintiff default judgment as to Plaintiff's NJWPL and unjust enrichment claims because the Court lacks a basis for exercising supplemental jurisdiction over those claims. In addition, because the Court denied Plaintiff's request for final certification of the FLSA collective action, the Court must deny Plaintiff's request for default judgment as to Plaintiff's FLSA collective action. Furthermore, because the Court declined to exercise supplemental jurisdiction over Plaintiff's NJWHL class action claim, Plaintiff's motion for default judgment as to that claim is denied. Finally, the Court will deny Plaintiff default judgment as to her individual FLSA[8] and NJWHL[9] claims.

---

[8] The Court notes that it may grant Plaintiff default judgment as to her individual FLSA claim while simultaneously granting Plaintiff conditional certification of the proposed class. See Rodriguez v. Almighty Cleaning, Inc., No. 09-2997, 2011 WL 1130276, at *12 (E.D.N.Y. Mar. 28, 2011) ("Courts in other jurisdictions . . . have determined that it is proper to grant default judgment in favor of named Plaintiffs while simultaneously granting a motion for conditional class certification under the FLSA."); James v. Claiborne, No. 07-1570, 2009 WL 994951, at *7-8 (W.D. La. Apr. 13, 2009) (simultaneously granting conditional certification and default judgment); Sniffen v. Spectrum Indus. Servs., No. 06-622, 2007 WL 1341772, at *1 (S.D. Ohio Feb. 13, 2007) (same). However, because Plaintiff moved for default judgment on behalf of herself and other members of the proposed FLSA collective action, the Court presumes that Plaintiff seeks to vindicate the rights of all members of the collective action along with her own individual rights. Thus, rather than severing Plaintiff from the proposed class that she seeks to represent, the Court will decline to grant Plaintiff default judgment as to her individual claim at this juncture. Should Plaintiff seek default judgment individually, she may move for default judgment after entry of this Court's Opinion and Order.

Moreover, it is unclear whether the Court could continue to adjudicate the FLSA collective action after granting Plaintiff default judgment. An entry of default judgment is a form of final relief that may trigger the mootness doctrine and bar Plaintiff from continuing as the class representative in the FLSA collective action. In Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004), the Third Circuit recognized an exception to the mootness doctrine where defendants attempt to "'pick[] off' lead plaintiffs with a Rule 68 offer to avoid a [Rule 23] class action." Id. at 347. However, that exception does not apply here because Defendant is not attempting to "pick off" Plaintiff through a Rule 68 offer. Here, Plaintiff seeks default judgment as to her FLSA collective action. See Weiss, 385 F.3d at 349 (distinguishing cases involving plaintiff's who voluntarily entered into individual settlement agreements from cases where defendants attempted to pick off class representatives by using Rule 68 offer "to thwart the putative class before the certification question could be decided."). Thus, if the Court grants Plaintiff default judgment, it is unclear whether Plaintiff can continue to represent the interests of the FLSA class unless an exception to the mootness doctrine applies. See Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 919 (5th Cir. 2008) (noting

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final certification of the proposed FLSA collective action is denied. In addition, Plaintiff's NJWHL, NJWPL, and unjust enrichment claims are dismissed, and Plaintiff's motion for default judgment is denied. An appropriate order shall issue.


Date: 7/28/2011                                         /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

---

that plaintiff's FLSA collective action is moot if plaintiff receives offer of judgment pursuant to Federal Rule of Civil Procedure 68, but creating exception to mootness based upon "relation back" doctrine).

[9] Because Plaintiff moved for default judgment as to her NJWHL claim as a representative of the putative class, and the Court declined to exercise supplemental jurisdiction over Plaintiff's NJWHL class claim, the Court refrains from granting Plaintiff default judgment as to any individual NJWHL claim she seeks to assert against Defendants. Should Plaintiff seek default judgment as to her NJWHL claim individually, she may do so after entry of this Court's Opinion and Order.