NOT FOR PUBLICATION (Doc. No. 42)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
JENNIFER TRONCONE, :
:
Plaintiff, : Civil No. 10-2961 (RBK/AMD)
:
v. : **OPINION**
:
:
EFTHEMIOS VELAHOS, NANCY :
VELAHOS, THE VELAHOS LAW :
FIRM and the NATIONAL :
FORECLOSURE CONSULTANT :
GROUP, :
:
Defendants. :
_____ :

**KUGLER,** United States District Judge:

This matter comes before the Court on the motion of Plaintiff Jennifer Troncone, on behalf of herself and on behalf of a class of similarly situated sales representatives, for final certification of a proposed "opt-in" class in a collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), and for certification of a proposed "opt-out" class action under Federal Rule of Civil Procedure 23(b)(3) involving New Jersey State Wage and Hour Law ("NJWHL") claims. For the reasons expressed herein, the Court will deny Plaintiff's motion to certify the FLSA opt-in class, and will grant Plaintiff's motion to certify the Rule 23(b)(3) class.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jennifer Troncone was a sales representative between July 2009 and February 2010 at the National Foreclosure Consulting Group ("NFC"). Defendant Efthemios Velahos is an attorney licensed to practice law in New Jersey, and operates the Velahos Law firm ("Firm") with his wife, Defendant Nancy Velahos. Compl. ¶ 6. NFC operated as part of the Firm. *Id.* ¶ 7. NFC advertises to the public that "for a fixed fee of several thousand dollars," it can delay or prevent mortgage foreclosures. *Id*. ¶¶ 10, 11. NFC employs sales representatives who market its services to the general public and initiate the mortgage modification process with interested clients. After NFC's sales representatives obtain the mortgage and foreclosure documents from their clients, they transfer the documents to the Firm. *Id.* ¶ 7. Between 2009 and 2010, sixty sales representatives worked for NFC. Pl.'s Br. in Support of Mot. to Certify 10.

Plaintiff first filed its suit in this Court on June 10, 2010 alleging that Defendants violated the FLSA and the NJWHL by failing to pay Plaintiff and other similarly situated employees minimum wage for the they hours worked and for failing to tender overtime pay at one and one-half times their regular rate of pay for all hours worked in excess of forty per week. Compl. ¶ 1. On July 28, 2011 the Court granted conditional certification of an FLSA "opt-in" collective action of a class consisting of sales representatives that worked for Defendant's mortgage modification business. (Doc. No. 14). At the same time, it dismissed the Rule 23 "opt-out" class action claim, declining to exercise supplemental jurisdiction over Plaintiff's state law action. *Id.* On July 23, 2012, the Court granted Plaintiff's motion for reconsideration of the Rule 23 "opt-out" class action claim based on recent Third Circuit case law, and held that while it could exercise jurisdiction over the NJWHL class action claim, Plaintiff had failed to carry her burden of demonstrating that she had met Rule 23's requirements for class certification. (Doc. No. 40).

2

Thus, it denied without prejudice her motion for class certification. Finally, Plaintiff filed the instant motion for final certification of a proposed FLSA "opt-in" class, and a renewed motion for certification of a proposed Rule 23 "opt-out" class on her NJWHL claims. (Doc. No. 42). Defendants did not file any briefs in opposition to this motion.

## II.     DISCUSSION & ANALYSIS

### A.     FLSA Opt-in Class Certification

Plaintiff seeks final certification of the proposed class for her FLSA "opt-in" collective action.[1] It is well established that an employee alleging that her employer has not met the wage and hour requirements outlined in the FLSA may bring a collective action on behalf of herself and a group of similarly situated individuals. 29 U.S.C. § 216(b). To proceed under this collective cause of action a party must demonstrate that class members are 'similarly situated' and that the members affirmatively consent to join the action. *Herring v. Hewitt Assocs., Inc.*, No. 06–267, 2007 WL 2121693, at *2 (D.N.J. July 24, 2007); *see also Morisky v. Pub. Serv. Elec. and Gas Co.,* 111 F. Supp. 2d 493, 496 (D.N.J.2000) ("The primary issue to be decided [in a motion to certify a collective action] is whether the named plaintiffs are sufficiently 'similarly situated' to the opt-in plaintiffs such that this case may proceed as a collective action.") (quoting 29 U.S.C. § 216(b)).

The Third Circuit uses a two stage analysis when deciding whether a FLSA "opt-in" collective action can move forward. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 n. 5 (3d Cir. 2011) (noting that the two-tiered approach is not mandated but appears to have gained wide acceptance). The first stage is a conditional certification where plaintiffs must make a "modest factual showing" to establish that they are similarly situated. *Id.* at 193. The second stage, or final certification, occurs after notice and the discovery process take place. *Id.* The

---

[1] The FLSA creates certain wage and hour requirements for employers. *See generally* 29 U.S.C. § 206, 207.

final certification stage requires a plaintiff to demonstrate by "a preponderance of the evidence that members of a proposed collective action are similarly situated." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2011). Because this determination necessarily entails such a fact-intensive inquiry, the final certification should take place "after discovery is largely complete and the case is ready for trial." *Morisky*, 111 F.Supp.2d at 497 (citation omitted); *see also Herring*, No. 06-267, 2007 WL 2121693 at *4 (D.N.J. July 24, 2007) (finding that although some discovery had taken place, the case was not "ready for trial" and thus final certification of the opt-in members was not appropriate).

In this case, final certification of the FLSA collective action is not appropriate at this time because the Court has been supplied only with the partial fruits of discovery. While the Court has received a payroll journal and list of employees from NFC, the Court has received no information about any other fruits of discovery that would allow it to conclude that this matter is "ready for trial." *See Morisky*, 111 F. Supp. 2d at 497. Accordingly, Plaintiff's motion for final certification of the FLSA collective action will be denied without prejudice.

**B.     Rule 23(b)(3) Class Certification**

Plaintiff seeks class certification under Rule 23 on behalf of all sales representatives that worked for Defendants' mortgage modification business. Pl.'s Br. in Support of Mot. to Certify 9. In order to qualify for class certification under Rule 23, a plaintiff must satisfy the threshold requirements of Rule 23(a) as well as the one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23; *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2548 (2011). The four threshold requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). As Plaintiff seeks certification under Rule 23(b)(3), she must also show that common question of fact among class members predominate

and that a class action is the superior method for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquires are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 306 (3d Cir. 2008).  In demonstrating compliance with Rule 23 "'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,'[;] certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites . . . have been satisfied.'" *Wal-Mart Stores, Inc.,* 131 S. Ct. at 2551 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

In addition to the above explicit requirements for class certification there are implicit requirements.  Class certification presupposes the existence of an actual class. *White v. Williams,* 208 F.R.D. 123, 129 (D.N.J.2002).  The class may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." *Id.*  In addition, a putative class is not appropriate for certification if class membership would "require fact-intensive mini-trials." *Id.* (quoting *Solo v. Bausch & Lomb Inc.*, 2009 WL 4287706 at *4 (D.S.C. Sept. 25, 2009)).  As an initial matter, the Court finds that Plaintiff meets these implicit requirements because it will be easy enough to determine which individuals worked as employees for NFC at the relevant time periods, and, for the reasons expressed below, adjudication of each class member's claims will not require the Court to conduct "fact-intensive mini-trials."

**A. Rule 23(a) Factors**

*i. Numerosity*

In this Circuit, a plaintiff establishes the numerosity requirement under Rule 23(a)(1) if she demonstrates that there are more than forty potential class members. *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 595 (3d Cir. 2012). The moving party must establish the number of potential class members, or at least a reasonable estimate of that number, with competent evidence. 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3][a] (3d ed.1999).

In this case, Plaintiff offers evidence that the proposed class consists of sixty members. (Pl.'s Br., Exh. B) (providing the payroll journal of all NFC employees who worked between January 2009 and 2010). Thus Plaintiff has satisfied the 23(a)(1) numerosity requirement.

*ii. Commonality*

FRCP 23(a)(2)'s so-called "commonality" element requires that a class action involve "questions of law or fact common to the class." The bar for commonality was traditionally understood to be fairly low. *E.g. Oplechenski v. Parfums Givenchy*, 254 F.R.D. 489 (N.D. IL 2008). But the Supreme Court's decision in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) raised that bar considerably. In denying class certification the Court in *Wal-Mart v. Dukes* specified that:

> What matters to class certification . . . is not the raising of common *questions*—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart v. Dukes,* 131 S.Ct, 2551 (citations omitted) (internal quotation marks omitted) (emphasis added).

In looking at the commonality requirement in wage and hour law cases post-*Dukes*, courts' inquiries have focused on where there was a common plan to deny pay. *See e.g. Ross v.*

6

*RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012) ("Although there might be slight variations in how [the employer] enforced its overtime policy, both classes maintain a common claim that [the employer] broadly enforced an unlawful policy denying employees earned-overtime compensation. This unofficial policy is the common answer that potentially drives the resolution of this litigation."); *Ripley v. Sunoco, Inc.,* 287 F.R.D. 300 (E.D. Pa. 2012) (finding that although compensation might be different for different class members commonality was met because of alleged policies that kept plaintiffs from receiving proper overtime pay).

In this case, Plaintiff satisfied the commonality requirement because she alleges a general policy by Defendants to prevent the proposed class members from collecting proper minimum wage and overtime pay. Unlike the Title VII case at issue in *Wal-Mart v. Dukes* that involved thousands of plaintiffs across the country with a multitude of different supervisors, this case involves sixty proposed class members that all worked in the same state, under the same supervisors. Despite the fact that each individual class member worked different hours and received a different amount of pay, the common question that drives the litigation (which will presumably involve a common answer) is whether Defendant maintained a single policy to deny the potential class members overtime and minimum wage pay.

### *iii. Typicality*

The third threshold requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001). Furthermore, the typicality requirement precludes certification of classes where the legal theory

of the named plaintiff potentially conflicts with the legal theory of the unnamed class members. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

In this case the named Plaintiff's claims are typical of the claims of the proposed class. She is alleging violations of the NJWHL for the time that she worked as a sales representative for Defendant. This is the same claim that she seeks to bring on behalf of the sixty proposed class members who were also sales representatives employed by Defendant. Additionally, because Plaintiff's motion is unopposed Defendant has made no showing that the named Plaintiff would be subject to a defense that might be inapplicable to the proposed members of the class. Thus, Plaintiff has satisfied Rule 23(a)(3)'s typicality requirement.

*iv. Adequacy*

The fourth threshold requirement of Rule 23(a) is that a plaintiff must show that as class representative she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement has two components. First, the court considers whether a plaintiff's attorney is qualified, experienced, and able to conduct the litigation. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir.1995)). Second, it considers whether there are any conflicts of interest between the named party and the class she seeks to represent. *In re Prudential*, 148 F.3d at 312 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 594 (1997)).

Here, Plaintiff's attorney certifies as to his significant experience handling employment cases, including class litigation. Pl.'s Br., Exh. K. In addition, the Court finds that there are no conflicts of interest between Plaintiff and the proposed class; rather Plaintiff and the class appear

united in the desire to prove that Defendant, through its actions and policies, violated the NJWHL. Thus, Plaintiff satisfies the adequacy requirement of Rule 23(a)(4).

**B. Rule 23(b)(3) Factors**

Plaintiff asserts a class action for money damages under Rule 23(b)(3). In order for the action to proceed on this basis, the Court must make two more findings: first, that common questions of law and fact predominate over individual ones, and second, that the class action device is the superior means of handling the litigation. Fed. R. Civ. P. 23(b)(3); *In re Prudential*, 148 F.3d at 314. These twin findings contemplate "cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001) (citing *Amchem Prods.*, 521 U.S. at 615). To assist in this determination Rule 23(b)(3) provides a list of non-exclusive factors for the Court's consideration:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

FRCP 23(b)(3).

*i. Predominance*

The primary question in the predominance inquiry is "whether common questions predominate over questions affecting only individual members." *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001). "Because the nature of the evidence that will suffice to

resolve a question determines whether the question is common or individual . . . a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at 311 (citations omitted) (internal quotations omitted).

The common questions of this case predominate over the questions affecting individual class members because Plaintiffs will rely on common proofs to establish Defendants' liability under the NJWHL.  First, Plaintiffs will adduce common proofs to establish their prima facie case.  For example, they were presumably hired under the same employment agreement, and they worked in the same capacity as sales representatives.  Second, they will probably use common proofs to establish Defendant's alleged policy of not paying minimum wage as required by the NJWHL.  The same can be said for Defendant's alleged policy of not paying overtime to the class members. The fact that individual class member worked different hours and received a different amount of pay does not preclude a finding that common issues of law and fact predominate over individual ones.  *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977) ("[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate.").  Thus, common issues will likely predominate over individual ones.

   *ii. Superiority*

In determining whether a class action is the superior form of handling a case, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir.1996).  Among other considerations, class treatment is often superior where individual

claims are small or modest. *See Jones v. Commerce Bancorp, Inc.*, No. 05–5600, 2007 WL 2085357 at *4 (D.N.J. July 16, 2007) (citing *In re Prudential*, 148 F.3d at 315).

In this case, the amounts owed to each individual class member are relatively small, thus weighing in favor of a class action. Furthermore, looking to 23(b)(3)'s enumerated factors, there is no evidence that this forum is an undesirable one for the concentration of this litigation, or that the management of this class action would present any particular difficulties. *See* Fed. R. Civ. P. 23(b)(3)(C), (D). Consequently, the Court finds that class adjudication is superior to other methods.

Because the proposed class meets the requirements of Rule 23(a) and (b)(3), the Court will grant Plaintiff's motion to certify it.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for final certification of the FLSA "opt-in" collective action, and it will grant Plaintiff's motion for certification of the Rule 23 class action on her NJHWL claims. The Court will issue an appropriate order.

Dated:   3/25/13                                                        /s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge